UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JOHNSONVILLE SAUSAGE, LLC,

           Plaintiff,

v.

KLEMENT SAUSAGE CO., INC.,

           Defendant.

Case No.: 16-cv-938

---

## BRIEF OF KLEMENT SAUSAGE CO., INC. IN SUPPORT OF ITS "BUT-FOR MATERIALITY" SHOWING FOR ITS INEQUITABLE CONDUCT DEFENSE AND COUNTERCLAIM

---

Jane C. Schlicht
State Bar No. 1000012
HINSHAW & CULBERTSON LLP
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address(es):
jschlicht@hinshawlaw.com

Ed Shapiro
Michael J. Femal
State Bar No. 0792012
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Direct: 312.521.2421
Fax No.: 312.521.2321
E-mail Addresses(es):
eshapiro@muchshelist.com
mfemal@muchshelist.com

Attorneys for Defendant KLEMENT SAUSAGE CO., INC.

301915064v1 0989247

## INTRODUCTION

In its May 21, 2018 Order, the Court expressed skepticism that Klement Sausage Co., Inc. ("Klement") could prove by clear and convincing evidence that the co-pending utility application was "but-for material" to the patentability of the design of the curved sausage tray (Order at 2, Dkt No. 56). The Court directed Klement to demonstrate why the Court should not grant partial summary judgment dismissing the inequitable conduct defense and counterclaim.

Klement asserts Plaintiff and/or its patent counsel should have disclosed during the prosecution of the Design Patent application: (1) the existence of the co-pending Utility application for a Sausage Tray (Serial Number 12/625,717 ); and (2) the Office Actions issued against the Utility application along with the prior art cited by the Examiner as the basis for rejecting the Utility application, namely Reskow, U.S. Patent No. 5,393,539 and Mello, U.S. Patent No. 5,770,249.

Klement asserts the Utility Application was "But-For Material" to the patentability of the design of the sausage tray. Because the representations in the Utility Application rendered the design of the sausage tray functional, had the utility application been disclosed, the examiner would not have allowed the design application. Klement also maintains the Mello and Reskow references when combined invalidate the design application based on obviousness (35 U.S.C. § 103), thereby making those references "But-For Material," to the patentability of the design of the sausage tray. Had Plaintiff and/or its counsel disclosed to the Examiner for the design application those references and the office action issued against the utility application, Klement maintains the design application would have finally and permanently been rejected.

## ARGUMENT

**I.** **The Utility Application Demonstrates the Claimed Design of the '754 Patent is Functional, Thereby Making the Utility Application "But-For Material" to the Patentability of the Design of the Curved Sausage Tray**

A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the [USPTO] during prosecution. **Digital Control Inc. v. Charles Mach. Works**, 437 F.3d 1309, 1313, (Fed. Cir. 2006). "A prior art reference is "but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." **Regeneron Pharmas, Inc. v. Merus N.V.**, 864 F. 3d 1343, 1350 (Fed. Cir. 2017). In determining the materiality of a reference, the court applies the preponderance of the evidence standard and gives claims their broadest reasonable construction. Id. at 1350. In other words, as long as it is clear that an examiner would not have allowed the patent application under the preponderance of the evidence standard, then "but-for materiality" has been shown.

A reference is not but-for material, however, if it is merely cumulative. *See* **Digital Control Inc. v. Charles Mach. Works**, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("However, a withheld otherwise material prior art reference is not material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner."). A reference is cumulative when it "teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO." **Regents of Univ. of Cal. v. Eli Lilly & Co**., 119 F.3d 1559, 1575 (Fed. Cir. 1997).

Information is material to patentability under 37 CFR § 1.56 when (a) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim or (b) it refutes, or is inconsistent with, a position the patentee takes in opposing an argument of unpatentability relied on by the USPTO or asserting an argument of patentability. Information is

not material to patentability when it is cumulative to information already of record. 37 CFR § 1.56(b).

The '754 Design Patent would not have issued had the Utility application been disclosed because the claimed design, in light of representations made by the Patentee within the '717 Utility Application, is primarily functional. (Stmt. Undisp. Facts ¶¶ 53, 59, 63, 69, 74 and 84)[1]. Therefore, the '717 Utility Application / U.S. Publication No. 2010/0230322 is "but-for material" to the patentability of the design of the curved sausage tray in the '754 Design Patent.

A.    The "Ornamental" Requirement for Design Patents

Utility patents cover the functional aspects of a product, while design patents cover the ornamental aspects of a product. (Stmt. Undisp. Facts ¶ 21). Patents for designs are granted for new, original and ornamental designs. 35 U.S.C. § 171.

An ornamental feature or design is one, which was "created for the purpose of ornamenting" and cannot be the result of or "merely a by-product" of functional or mechanical considerations. (Stmt. Undisp. Facts ¶ 25). An ornamental design within the requirements of 35 U.S.C. § 171 must be "created for the purpose of ornamenting." MPEP 1504.01(c) (9th Ed. 2018). While the functional aspects of a design may provide a recognizable feature, that does not make that feature ornamental.   (Stmt. Undisp. Facts ¶ 27).

The subject matter of a design patent that lacks ornamentality should be rejected under 35 U.S.C. § 171 when the claimed feature(s) of the design application are primarily functional. MPEP 1504.01(c) (9th Ed. 2018).

The "ornamental" requirement for design patents is an extra requirement that utility patents do not have to satisfy. As set forth in § 171(b), the "provisions of [Title 35] relating to

_____

[1] References to "Defendant's Local Rule 56(b)(1)(c) Statement of Undisputed Material Facts In Support of Its Materiality Submission" are abbreviated as "Stmt. Undisp. Facts ¶ ___.)."

patents for inventions shall apply to patents for designs." Thus, the extra requirement that a claimed design be primarily ornamental, and not primarily functional, makes evidence of functionality highly relevant to materiality for design patents, in addition to prior art evidence. **Hupp v. Siroflex of Amer.**, 122 F. 3d 1456, 1460 (Fed. Cir. 1997) (a design or shape that is entirely functional, without ornamental or decorative aspect, does not meet the statutory criteria of a design patent).

The MPEP instructs examiners on determining whether the claimed feature(s) of the application is/are primarily functional. (Stmt. Undisp. Facts ¶ 28). The examiner may use the specification of an analogous utility patent or the specification of a related utility patent to establish a prima facie case that the claimed feature(s) is/are primarily functional. MPEP 1504.01(c) (9th Ed. 2018).

### B. The Duty of Good Faith and Candor Obligated Johnsonville and Its Patent Counsel to Disclose the Utility Application.

The duty of good faith and candor includes disclosing related applications that have similar subject matter but claim patentably indistinct inventions. (Stmt. Undisp. Facts ¶ 15). The Court of Appeals for the Seventh Circuit recognized (before the formation of the Court of Appeals for the Federal Circuit) that because an examiner cannot know every detail of every pending file, the patentee is responsible for presenting a complete record to support the application. **Armour & Co. v. Swift & Co.**, 466 F.2d 767, 779 (7th Cir. 1972).

When discussing the duty of good faith and candor, the Manual of Patent Examining Procedure (MPEP) reminds patentees and attorneys prosecuting patent applications that they "cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner." MPEP 2001.06(b) (9th Ed. 2018) Additionally, "if a particular inventor has different applications pending which disclose similar

subject matter but claim patentably indistinct inventions, the existence of other applications must be disclosed to the examiner of each of the involved applications." MPEP 2001.06(b) (9th Ed. 2018).

A patentee cannot assume that the examiner is aware of a co-pending utility patent. MPEP 2001.06(b) (9th Ed. 2018)  While the examiner may take steps to become cognizant of co-pending applications, such as performing an inventor search, there is no guarantee the examiner will find the co-pending application. For example, the '717 Utility Application and the '754 Design Patent have different inventive entities with different first named inventors. (Stmt. Undisp. Facts ¶¶ 9 and 10).  The first named inventor of the '717 Utility Application is David Nicholson and the inventor of the '754 Design Patent is Dean Benson. (Stmt. Undisp. Facts ¶¶ 9 and 10). If a search was done, it is plausible that the examiner did not realize a patent application with different inventive entities and different first named inventors were closely related. Ultimately, unless (a) the examiner memorializes that they considered the co-pending application or (b) the co-pending application is cited by the patentee (i.e., the co-pending application is made of record), it is plausible and likely that that the examiner was not aware of the co-pending utility application. (Stmt. Undisp. Facts ¶ 19).

Further, during prosecution, when (a) there is a lack of evidence on the record that the examiner knew of the related application and (b) the utility application is material to the design application, prudent practice counsels for disclosing the existence of the concomitant utility application. (Stmt. Undisp. Facts ¶ 20). During prosecution, the patentee has multiple opportunities to bring the related utility application to the attention of the examiner. (Stmt. Undisp. Facts ¶ 15). For example, after filing the design patent application, the patentee can amend the specification of the design patent or file an Information Disclosure Statement ("IDS"), to correct for not cross-referencing the related applications.

6

A utility patent or application is always material to the patentability of a design patent disclosing similar subject matter under 37 CFR § 1.56. Klement asserts that the duty of good faith and candor imposed a per se requirement on Johnsonville and its patent counsel to actively take steps to inform the USPTO of the existence of a co-pending utility application during the prosecution of the related design application where there is no specific evidence on record that the examiner actually knew of the co-pending utility application. These active steps may include cross-referencing the utility application or citing the publication of the utility application in an IDS. (Stmt. Undisp. Facts ¶ 15).

There is no evidence of record in the prosecution history of the '754 Design Patent which indicates the '717 Utility Application was brought to the attention of the examiner or that the examiner was aware of the existence of the '717 Utility Application. (Stmt. Undisp. Facts ¶ 19).

C. **The Claimed Design of the '754 Patent**

The claimed design in a design patent is the combination of the design features that are in solid lines, as the features in broken or dashed lines are for purposes of illustration and form no part of the claimed design. (Stmt. Undisp. Facts ¶ 31). The '754 Design Patent has 12 figures which make up the claimed design. (Stmt. Undisp. Facts ¶ 33). Figures 1-6 is a first embodiment of the claimed design and figures 7-12 make up a second embodiment of the claimed design. (Stmt. Undisp. Facts ¶ 34). Because the "claimed" or solid line features of both embodiments are the same, figures 1-6 and 7-12 effectively are the same claimed design. (Stmt. Undisp. Facts ¶ 35). It is only the broken line features which differ in each of the two embodiments. (Stmt. Undisp. Facts ¶ 36). This is consistent with the examiner's comments in the Notice of Allowability in the '754 Design Patent. (Stmt. Undisp. Facts ¶ 37; See **Exhibit L**, Notice of Allowability, Muraff Dec.).

There are two claimed features that relate to and are complimentary of one another in the '754 Design Patent. (Stmt. Undisp. Facts ¶ 38). First, the '754 Design Patent claims the *interior surface* of the end walls of the sausage tray. (Stmt. Undisp. Facts ¶ 39). Second, the '754 Design Patent claims the *exterior surface* of the end walls of the sausage tray. (Stmt. Undisp. Facts ¶ 40). The end walls are the convex and concave walls in the '754 Design Patent that fit the curvature of and assist in "nesting" sausages in the sausage tray, as set forth in at least paragraphs [0005] and [0022] the '717 Utility Application. (Stmt. Undisp. Facts ¶ 41).

Figures 1, 2, 7, and 8 of the '754 Design Patent define the claimed interior surface of the end walls of the sausage tray, and figures 3-6 and 9-12 define the exterior surface of the end walls of the sausage tray. (Stmt. Undisp. Facts ¶ 42). The interior surface and the exterior surface of the end walls effectively define a thickness there between, which in turn define the end walls themselves. (Stmt. Undisp. Facts ¶ 43). The interior surface has claimed upper and lower edges, and the exterior surface also has claimed upper and lower edges, all of which are a part of the convex and concave end walls. (Stmt. Undisp. Facts ¶ 44).

Other than the claimed *interior surface* and *exterior surface* of the end walls, which effectively define the convex and concave end walls, there are no other claimed features of the '754 Design Patent. (Stmt. Undisp. Facts ¶ 45). Thus, the claimed design of the '754 Design Patent as a whole is directed to the convex and concave end walls of the sausage tray. (Stmt. Undisp. Facts ¶ 46).

### D. The Claimed Design of the '754 Design Patent is Primarily Functional, and Not Primarily Ornamental, Under the High Point Design Factors

The Court of Appeals for the Federal Circuit sets forth several factors to determine whether a claimed feature of a design patent is functional. Those factors, known as the "High Point Design Factors," are: (1) whether the design reflects the best design; (2) whether alternative designs would affect the utility of the article; (3) whether there exists a concomitant

utility application; (4) whether advertising touts particular features of the design as having a specific utility; and (5) whether any elements of the design's overall appearance are not clearly dictated by function. ***PHG Techs, LLC, v. St. John Cos.***, 469 F.3d 1361, 1366 (Fed. Cir. 2006).

Depending on the facts of the case, less than all of the factors may be dispositive of the issue of functionality. "There is no requirement that all of the High Point Design factors be considered and a single factor may be dispositive." **Dorman Prods., v. PACCAR, Inc.**, 201 F.Supp 3d 663 (E.D. Pa. 2016) (citing **Best Lock Corp. v. Ilco Unican Corp.**, 94 F.3d 1563, 1566 (Fed. Cir. 1996)).

The '717 Utility Application and its prosecution history are important in analyzing the High Point Design Factors to determine whether the claimed design of the '754 Design Patent is primarily functional. (Stmt. Undisp. Facts ¶ 29). Regardless of whether the standards for evaluating novelty and non-obviousness of utility applications and design applications are different, the functional description of the similar subject made in the specification of the utility application, along with representations made during the course of prosecution, is highly relevant to whether a particular design is primarily functional. **Metrokane, Inc. v. Built NY, Inc.**, 2008 U.S. Dist. LEXIS 107937, *113 (S.D. N.Y. Sept. 3, 2008) (Patentee did not contest materiality of its utility application in relation to design for same product, namely a tote for wine bottles).

As demonstrated below, the analysis of the High Point Design Factors clearly shows that the '754 Design Patent would not have issued because the claimed design, in light of representations made by the Patentee within the '717 Utility Application, is primarily functional. Therefore, the '717 Utility Application / U.S. Publication No. 2010/0230322 is "but-for material" in the context of the inequitable conduct analysis.

1. _The Claimed Design in the '754 Design Patent Reflects the Best Design For A Sausage Tray_

The first High Point Design Factor addresses whether the design reflects the best design. Where a design clearly represents the best design, functionality should be found. **_PHG Techs., LLC v. St. John Cos._**, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (vacating the district court's grant of a preliminary injunction in view of functional statements made within the prosecution of a co-pending utility patent application showing that the claimed design for medical label sheets was primarily functional, and in view of potential alternative designs adversely affecting the utility of the claimed design).

The '717 Utility Application identifies the functional problems with the state of the art, namely: (1) shifting sausage links within the packaging causing the sausage links to look undesirable (likely due to the sausage links becoming deformed from both shifting and stacking of trays, and/or combinations thereof); and (2) the sausage links do not cover the entire bottom of the tray resulting in wasted or unneeded material being used to create the tray. (Stmt. Undisp. Facts ¶¶ 47 and 48). The '717 Utility Application describes the functional solution to these problems by describing the concave and convex walls and how they secure the nested sausages on the trays from shifting and eliminate empty space on the tray. (Stmt. Undisp. Facts ¶¶ 49 and 50).

Because an applicant is required to disclose what the applicant believes to be the best mode for carrying out the invention to the USPTO within a patent application, the Patentee of the '717 Utility Application clearly believed the convex and concave ends walls were the best way to achieve the goals of (1) securing and nesting the sausages on the tray, thereby preventing shifting and deformation thereof, and (2) eliminating empty space on the tray and reducing the amount of material needed to create the sausage tray. (Stmt. Undisp. Facts ¶ 52). The solution of

the convex and concave ends walls achieving these goals are clearly dictated by functional considerations. (Stmt. Undisp. Facts ¶ 53).

Further, the Patentee issued a press release that touts the convex and concave end walls as creating a superior design dictated by functional considerations. (Stmt. Undisp. Facts ¶¶ 54-57).

The '717 Utility Application, together with the Patentee's further admissions in its press release, clearly shows that the convex and concave ends walls are the best way to achieve the goals of (1) securing and nesting the sausages on the tray, thereby preventing shifting and deformation thereof, and (2) eliminating empty space on the tray and reducing the amount of material needed to create the sausage tray. Thus, the High Point Design Factor of whether the design reflects the best design clearly weighs in favor of a showing that the claimed design in the '754 Design Patent is primarily functional. (Stmt. Undisp. Facts ¶ 59).

At least one Court has indicated that the satisfaction of this High Point Design Factor is enough to prevent design patent protection, which would establish "but-for" materiality in the present case. *See **PHG Techs.***, 469 F. 3d at 1366. The satisfaction of this High Point Design Factor establishes that the '717 Utility Application / U.S. Publication No. 2010/0230322 is "but-for material" to the patentability of the curved sausage tray in the '754 Design Patent.

2.    *Alternative Designs Would Affect the Utility of the Article*

An important, if not dispositive, factor is the availability of alterative designs which do not adversely affect the utility of the claimed design. ***Po-Hsun Lin v. Belkin Int'l, Inc.***, 2017 U.S. Dist. LEXIS 167499, *9-11 (C.D. Cal. May 12, 2017) (citing ***Ethicon Endo-Surgery, Inc. v. Covidien, Inc.***, 796 F.3d 1312, 1329-30 (Fed. Cir. 2015) (setting forth that the functionality analysis should begin with this factor, but where the existence of alternative designs is not dispositive, the district court may look to other factors)). The focus is on the claimed design within the '754 Design Patent. That is, whether there are any alternatives to the convex and

concave end walls of the sausage tray, and if so whether such alternatives are as good at achieving the stated goals of (1) securing and nesting the sausages on the tray, thereby preventing shifting and deformation thereof, and (2) eliminating empty space on the tray and reducing the amount of material needed to create the sausage tray.

The '717 Utility Application does not identify any alternatives to the convex and concave end walls for achieving the goals of (1) securing and nesting the sausages on the tray, thereby preventing shifting and deformation thereof; and (2) eliminating empty space on the tray and reducing the amount of material needed to create the sausage tray. (Stmt. Undisp. Facts ¶ 60). Rather the '717 Application asserts the convex and concave end walls must exist and follow the contours of the side shape of a sausage link. (Stmt. Undisp. Facts ¶ 61).

The '717 Utility Application itself makes clear that it is highly unlikely that there can be any alternatives to the convex and concave end walls which do not adversely affect the stated utility in the '717 Utility Application for the claimed design in the '754 Design Patent. (Stmt. Undisp. Facts ¶ 62). Thus, this High Point Design Factor of whether alternative designs would affect the utility of the article clearly weighs in favor of a showing that the claimed design in the '754 Design Patent is primarily functional. (Stmt. Undisp. Facts ¶ 63). As indicated above, this High Point Design Factor is important, if not dispositive, to showing that the claimed design is primarily functional, which would establish "but-for materiality" of the '717 Utility Application in the present case. The satisfaction of this High Point Design Factor demonstrates the claimed design is primarily functional, and establishes the '717 Utility Application / U.S. Publication No. 2010/0230322 is "but-for" material to the '754 Design Patent.

### 3. *There Exists a Concomitant Utility Patent Application*

Johnsonville's utility application is directed to a "sausage tray" with concave and convex side walls. (Claim 1, Ex. D; (Stmt. Undisp. Facts ¶¶ 13; 65). Similarly, Johnsonville's design

application is directed to a "sausage tray" with concave and convex side walls. (Ex. B Figs. 7 and 8; (Stmt. Undisp. Facts ¶¶ 14; 64). These emphasized features are all directed to, or claim the utility of, the claimed design of the convex and concave end walls of the sausage tray of the '754 Design Patent. (Stmt. Undisp. Facts ¶ 66).

The fact that a utility patent was sought by the patentee to cover the exact same design is strong evidence that the claimed design is functional. *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (relying on functional statements made within the prosecution of a concomitant / co-pending utility patent application showing that the claimed design was primarily functional). Here, it is clear that both the '717 Utility Application and the '754 Design Patent are concomitant and were co-pending, both being filed on the same day (January 12, 2010). (Stmt. Undisp. Facts ¶¶ 9 and 10). Further, it is also clear that both include the same two sausage tray embodiments. (Stmt. Undisp. Facts ¶¶ 64 and 65).While the drawings may be in a different order, the drawings are the same as between the '717 Utility Application and the '754 Design Patent, with any differences being the result of the different drawing practices between utility patent applications and design patent applications.[2] (Stmt. Undisp. Facts ¶¶ 9 and 10).

The High Point Design Factor of whether there is a concomitant utility application clearly weighs in favor of a showing that the claimed design in the '754 Design Patent is primarily functional. (Stmt. Undisp. Facts ¶ 69). Satisfaction of this High Point Design Factor contributes significantly toward establishing invalidity of the Design Patent based on functionality and renders the utility application "but-for material" to the patentability of the design of the curved sausage tray in the '754 Design Patent. *See* **Metrokane, Inc. v. Built NY, Inc.**, 2008 U.S. Dist.

---

[2] The '717 Utility Application includes "sectional" views (cross-sections) of the sausage tray in some figures, and the '754 Design Patent does not. Sectional views are not included within design patents because the claimed design therein must be visible to actual and potential consumers in the article's normal and intended use. *See* MPEP 1504.01(C) (9th Ed. 2018).

LEXIS 107937, *113 (S.D.N.Y. Sept. 3, 2008) (patentee did not contest the materiality of its own utility patent application relating to its design patent for the same product – a wine tote).

4.      *A Press Release Touts the Claimed Design as Having Specific Utility*

A Johnsonville advertisement / press release clearly touts the convex and concave ends walls as creating a superior design dictated by the significant savings of material used in the tray. (Stmt. Undisp. Facts ¶ 70). Specifically, on May 3, 2016, the Plaintiff issued a press release mentioning its supplier and their respective EVOK package, stating that:

> [B]ack in 2010 – also with Cascades' foam trays – Johnsonville made a very simple change by transitioning from a full rectangular-shaped polystyrene tray for its fresh bratwurst and Italian sausages, to a tray that contours along one side to mimic the shape of the dinner sausages – resulting in 6% less packaging being used in each tray. To date, this packaging size reduction effort has resulted in an annual decrease of 120,000 pounds of material waste.

(Stmt. Undisp. Facts ¶ 71).

The advertisement/press release clearly touts the convex and concave end walls as creating a superior design dictated by the significant savings of material used in the tray. (Stmt. Undisp. Facts ¶ 73).

The High Point Design Factor of whether advertising touts particular features of the design as having specific utility clearly weighs in favor of a showing that the claimed design in the '754 Design Patent is primarily functional. (Stmt. Undisp. Facts ¶ 74). The satisfaction of this High Point Design Factor contributes significantly toward establishing invalidity based on functionality. While satisfaction of this factor alone may not be enough to establish that the claimed design is primarily functional, the non-disclosure of '717 Utility Application / U.S. Publication No. 2010/0230322 relative to the other factors in combination with this factor being

14

satisfied clearly does establish that the claimed design is primarily functional. Therefore, the '717 Utility Application / U.S. Publication No. 2010/0230322 is "but-for" material to the patentability of the '754 Design Patent.

5. *All Elements of the Claimed Design Are Clearly Dictated By Function*

The last High Point Design Factor is whether any elements of the design's overall appearance are not clearly dictated by function. As set forth above, the claimed design in the '754 Design Patent is directed to the convex and concave end walls of the sausage tray. (Stmt. Undisp. Facts ¶ 75). Also, as set forth above, the '717 Utility Application makes clear that these claimed design features are dictated by function. (Stmt. Undisp. Facts ¶¶ 76-82). Klement submits the claimed design of the convex and concave end walls of the sausage tray is clearly dictated by function. There are no other claimed design features in the '754 Design Patent. (Stmt. Undisp. Facts ¶ 83). Thus, this High Point Design Factor of whether any elements of the design's overall appearance are not clearly dictated by function clearly weighs in favor of a showing that the claimed design in the '754 Design Patent is primarily functional. (Stmt. Undisp. Facts ¶ 84). The satisfaction of this High Point Design Factor contributes significantly toward establishing invalidity based on functionality and establishes that the '717 Utility Application / U.S. Publication No. 2010/0230322 is "but-for" material to the patentability of the design of the curved sausage tray in the '754 Patent.

**II. The Reskow and Mello References Were "But-For Material" to the Patentability of the Design of the Curved Sausage Tray**

Johnsonville did not cite the '249 Mello Patent or the '539 Reskow Patent to the examiner for the '754 Design Patent. (Stmt. Undisp. Facts ¶ 85). These references, when combined, render the design of the curved sausage tray obvious. (Stmt. Undisp. Facts ¶ 106). Had these references which were cited by the Examiner on the Utility Application as grounds to render the sausage tray Obvious, the Examiner on the Design application would have rejected the

15

application. These references are "but-for material" to the patentability of the '754 Design Patent.. (Stmt. Undisp. Facts ¶ 107).

To be patentable, a design must be non-obvious. 35 U.S.C. §§ 103 and 171. "[T]he ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." **MRC Innovations, Inc. v. Hunter Mfg., LLP**, 747 F.3d 1326, 1331 (Fed. Cir. 2014). To determine this, one must determine whether the designer of ordinary skill would have combined the teachings of the prior art to create the same overall visual appearance as the claimed design. This test requires consideration of the "visual impression created by the patented design as a whole." Id.

The '249 Mello Patent and the '539 Reskow Patent are prior art. (Stmt. Undisp. Facts ¶ 95).The '249 Mello Patent has a priority date in 1995 and the '539 Reskow Patent has a priority date in 1993. (Stmt. Undisp. Facts ¶ 96). As discussed above, the '754 Design Patent as a whole is directed to the shape and appearance of the convex and concave end walls of the sausage tray. (Stmt. Undisp. Facts ¶ 97).

The '249 Mello Patent depicts a sausage tray with convex and concave end walls (Stmt. Undisp. Facts ¶ 98). (See Reference Number 20 of FIG. 1 of the '249 Mello Patent; Muraff Dec. ¶ 80 and Exhibit G). The appearance of the product within the '249 Mello Patent is different from the appearance of product in the '754 Design Patent in three primary ways: (1) the '249 Mello Patent depicts an elongated upper outer lip (See FIG. 3 of the '249 Mello Patent, Muraff Dec. Exhibit G); (2) the '249 Mello Patent depicts interior compartment walls (See FIG. 3 of the '249 Mello Patent, Muraff Dec. Exhibit G); and (3) the '249 Mello Patent depicts a curve to the interior end walls of the sausage tray to have a slight inner lip (See Reference Number 18 of FIG. 3 of the '249 Mello Patent, Muraff Dec. Exhibit G). (Stmt. Undisp. Facts ¶ 99).

However, only one of these differences is relevant to the "claimed design" in the '754 Design Patent. (Stmt. Undisp. Facts ¶ 100). Specifically, the outer lip and the lower supporting surface of the '249 Mello Patent are not relevant to the claimed design in the '754 Design Patent. (Stmt. Undisp. Facts ¶ 101). Only the shape of the convex and concave end walls of the '249 Mello Patent is relevant to the claimed design of the '754 Design Patent. (Stmt. Undisp. Facts ¶ 102).

The '539 Reskow Patent fills in any and all missing gaps in the claimed design that the '249 Mello Patent may not. (Stmt. Undisp. Facts ¶ 103). Specifically, the '539 Reskow Patent depicts and discloses the same interior surface and exterior surface (cross sectional side view) of the end walls as that shown in the claimed design of the '754 Design Patent (See Reference Numbers 16 and 40 of FIGS. 3 and 4 of the '539 Reskow Patent, Muraff Dec. Exhibit H). (Stmt. Undisp. Facts ¶ 104). In other words, although the '539 Reskow Patent does not show convex and concave shaped end walls from a top view, the end walls of the '539 Reskow Patent do show the same shape and appearance from a side view as the claimed design of the '754 Patent. (Stmt. Undisp. Facts ¶ 105).

Klement submits that a designer of ordinary skill would have combined the opposing concave and convex end walls of '249 Mello Patent with the end walls of '539 Reskow Patent to create the same overall visual impression as the claimed design, at least to create a package that provides a way to save packaging material while nesting and supporting the sausages. Therefore, the '249 Mello Patent and the '539 Reskow Patent are "but-for material" to patentability. Had the examiner known of both the '249 Mello Patent and the '539 Reskow Patent, the examiner would have finally and permanently rejected the application of the '717 Design Patent under 35 U.S.C. § 103. Therefore, the '249 Mello Patent and the '539 Reskow Patent are "but-for" material in the context of the inequitable conduct analysis. **Morningware, Inc. v. Hearthware**

**Home Prods.**, 898 F. Supp. 2d 1018, 1042 (N.D. Ill. 2012) ("A prior art reference 'is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art'").

### III. Klement's Submission Demonstrates "But-For Materiality" By Clear and Convincing Evidence

There is no evidence that the examiner for the Design application was aware of the co-pending Utility application. (Stmt. Undisp. Facts ¶ 19). As demonstrated above, all five of the High Point Design Factors are satisfied. The satisfaction of all five of the High Point Design Factors demonstrates as a matter of law by clear and convincing evidence that the design of the sausage tray is primarily functional. **OraLabs, Inc. v. The Kind Grp. LLC**, 2015 U.S. Dist. LEXIS 98246, *35 (D. CO, July 28, 2015) (as a matter of law the overall design is not functional as established by defendant's failure to produce evidence concerning four of the five High Point factors); **Caron v. QuicKutz, Inc.**, No. CV-09-02600-PHX-NVW, 2012 U.S. Dist. LEXIS 162737, *11 (Ariz. Nov. 13, 2012) (defendant proved inequitable conduct by clear and convincing evidence as a matter of law on three of the four inequitable acts defendant alleges plaintiffs engaged); **Worldwide Home Prods. v. Bed, Bath & Beyond, Inc.**, 74 F. Supp. 3d 626, 635 (S.D. NY 2015) (clear and convincing evidence of materiality shown as a matter of law by evidence the examiner did not have access to prior art hangers and by support of defendant's expert affidavit).

Had Johnsonville and/or its patent counsel disclosed the Utility application during the prosecution of the Design application, the examiner would have finally and permanently rejected the Design application as functional. Thus, Klement has demonstrated as a matter of law clear and convincing evidence that the Utility application is "but-for" material.

Further, the combination of the Mello and Reskow references render the design of the sausage tray obvious. Had those references been disclosed to the examiner as separate prior art

references or through disclosure of the Final Office Action issued against the Utility Application, the Design Application would have been rejected. These prior art references are "But-For" Material as a matter of law.

## IV. Alternatively, Klement's Submission Constitutes Sufficient Evidence to Create a Triable Issue of Fact.

If the Court is not convinced that these references are "But-For" material as a matter of law, Klement's submissions create a triable issue of fact on "But-For" materiality. **Blue Spike, LLC v. Audible Magic Corp.**, 6:15-CV-584, 2016 U.S. Dist. LEXIS 93928, **43-45 (E.D. Tex., Feb. 26, 2016) (finding a genuine dispute of fact remained on whether the alleged prior art was "but-for material"); **Ojmar US, LLC v. Sec. People, Inc.**, 16-CV-04948-HSG, 2018 U.S.Dist. LEXIS 58544, *15 (ND Cal. Apr. 5, 2018) (question of fact whether prior art is "but-for material" or cumulative of the prior art examiner considered during prosecution.).

On the issue of functionality, through proof of all five of the High Point Design Factors, Klement has made a prima facie case of materiality warranting a trial on this issue.

Similarly, sufficient questions of fact exist requiring a trial on the materiality of the Mello and Reskow references. **Digital Control Inc.**, 437 F.3d at 1313 (the scope and content of prior art and what the prior art teaches are questions of fact). Given the fact the claims of the Design Patent have not yet been construed, it is premature to attempt to put the prior art into the materiality context. **Schlumberger Tech. Corp. v. Bico Drilling Tools, Inc.**, Civil Action H-17–3211, 2018 U.S. Dist. LEXIS 74951, n. 2 (S.D. Tex., May 3, 2018).

Newholm in his September 16, 2016 Declaration asserted that the Mello and Reskow references were cumulative and therefore not material to the patentability of the design of the sausage tray. (Dkt #16). The question of cumulativeness still plays a role in the materiality analysis, because a reference is not but-for material if it is merely cumulative. **Ojmar US, LLC v. Sec. People, Inc.**, No. 16-CV-04948-HSG, 2018 U.S. Dist. LEXIS 58544, *20 (N.D. Cal.

19

April 5, 2018) (citing **Regeneron Pharms., Inc. v. Merus N.V.**, 864 F.3d 1343, 1350 (Fed. Cir. 2017)). "A reference is cumulative when it 'teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO.'" Id. (quoting Regeneron, 864 F.3d at 1350). Whether or not a reference is cumulative is a fact specific inquiry, especially when the potentially cited reference is similar, but not identical, to references already of record. The prudent and best practice is to cite references from all related applications to provide the examiner with a complete opportunity to know of and consider the art cited in the related applications.

Accordingly, Klement submits there is sufficient evidence to support the "but-for" materiality of the Utility Application and the Mello and Reskow references to warrant a trial on this issue.

## <u>CONCLUSION</u>

Klement requests an Order determining that: (1) the Utility Application was "But-For Material" to the patentability of the design of the curved sausage tray; and (2) the combination of Reskow and Mello references rendered the design of the sausage tray obvious, thereby making those references "But-For Material" to the patentability of the design of the sausage tray.

Alternatively, Klement seeks an Order determining that questions of fact warrant the issue of materiality to be tried along with the remaining issues in the case.

Dated this 8th day of June, 2018.

/s/ Jane C. Schlicht

Jane C. Schlicht
State Bar No. 1000012
Attorneys for Defendant KLEMENT
SAUSAGE CO., INC.
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Phone No.  414-276-6464
Fax No.  414-276-9220
E-mail Address(es):
jschlicht@hinshawlaw.com

and

Michael J. Femal
**MUCH SHELIST, P.C.**
191 N. Wacker Dr., Suite 1800
Chicago, IL  60606-1615
Phone No. 312-521-2000
Fax No. 312-521-2100
mfemal@muchshelist.com

Attorneys for Defendant KLEMENT
SAUSAGE CO., INC.